**Paul R. CLARK, Appellant–
Petitioner/Cross–
Respondent,**

v.

**Anne T. (Clark) MADDEN, Appellee–
Respondent/Cross–Petitioner.**

No. 49A02–9906–CV–381.

Court of Appeals of Indiana.

March 10, 2000.

---

1. We have considered ADC's remaining arguments and find them also to be without merit.

George T. Patton, Jr., Monty K. Woolsey, Indianapolis, Indiana, Attorneys for Appellant.

Andrew D. Freeman, Lauren E. Willis, Brown, Goldstein & Levy, LLP, Baltimore, Maryland, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Amicus National Federation of the Blind. .

Russell T. Clarke, Jr., Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner/cross-respondent Paul R. Clark (Father) appeals the trial court's judgment concerning child support, child custody and limitations on the custodial parent in the decree dissolving his marriage to appellee-respondent/cross-petitioner Anne (Clark) Madden (Mother).[1] Father specifically disputes the order that he be accompanied at all times by a responsible adult when V.C., his daughter, is with him.[2] Furthermore, he appeals the trial court's order that he pay V.C.'s sec-

---

1. Oral argument was heard in this case on January 20, 2000 in Indianapolis.

2. This order was entered with the finding that Clark is visually impaired and that he would require a nanny or housekeeper to help care for V.C. while she was young.

ondary education expenses, the trial court's income calculation and child support calculation, and its order of shared physical custody.

## FACTS

Mother and Father were married on August 18, 1994. Their daughter V.C. was born on June 2, 1996. Father has been blind since birth. He is now in his fifties and has lived independently, traveling, completing a degree in computer technology, and founding two successful computer companies of which he is currently the chief executive officer.

Father claimed $398,000 in taxable income in 1998. The trial court attributed to him additional income derived from company-provided benefits. Mother was last employed before marrying Father, in one of Father's companies. She terminated her employment and planned not to work but to raise a family during the marriage. She earned approximately $27,500 in the past but was not employed at the time of the final dissolution hearing. The trial court imputed to her $20,000 in annual income.

At a temporary custody hearing and again with regard to the final custody determination, Father offered to hire a full-time nanny to assist him in caring for V.C. However, Father and Mother disagreed about the degree to which the nanny was needed. Father pointed out that he had cared for V.C. alone for a weekend on one occasion and that a nanny was not required to be in the presence of Father and his daughter at all moments. In addition, Father did not feel the need for the overnight presence of a nanny. Mother argued that Father needed help in caring for the toddler V.C. and that it was in the best interest of the child for the court to mandate such help.

Following a final hearing on custody and support on February 25–26 and March 2, 1999, the trial court entered findings of fact and conclusions of law on March 12, 1999. The findings relevant to this appeal are set forth below:

41. The Court finds that Father is visually impaired and at least while [V.C.] is young, Father will be required to employ a nanny/housekeeper. The Court finds that at all times [V.C.] is with Father, Father must be accompanied by another responsible adult [henceforth: the "accompaniment requirement"]. The court further finds that Ms. Young [the nanny] will be moving into Father's residence in the very near future and that [V.C.] has bec[o]me quite close and attached to her nanny.

42. In light of all evidence in this case, the court finds that it is in the best interest of [V.C.] that Father be awarded sole legal custody of [V.C.].

43. The court further finds that it is in the best interest of [V.C.] that Mother and Father share her physical custody. Mother and Father shall have the physical care of [V.C.] for alternating weeks from Sunday at 6:00 p.m. to the following Sunday at 6:00 p.m.

\* \* \* \*

46. Father has a history of full time gainful employment. Father testified his 1998 income was approximately Four Hundred Thousand Dollars ($400,000). However, Father's income did not include Forty–Five Thousand Dollars ($45,000) paid to Renate Young as her yearly salary, and company benefits provided to him in lieu of salary such as automobiles. At a minimum, the Court finds Father's 1998 income was Five Hundred Thousand Dollars ($500,000).

47. Mother has been unemployed since before the parties' marriage. However, the court finds Mother is capable of full time employment and

the court imputes income to Mother of Twenty Thousand Dollars ($20,000) per year.

* * * *

49. The child support worksheet attached hereto indicates that Father's child support obligation, without deviation is Three Hundred Eighty–Nine Dollars ($389.00) per week. The Court, because of the split physical custody of [V.C.] will deviate and adjust Father's child support obligation to Two Hundred Fifty Dollars ($250.00) per week.

* * * *

53. ... The court finds it is in [V.C.'s] interest [that] Father pay for all [V.C.'s] education expenses, which shall include tuition, books, housing, food, required fees and other related expenses of [V.C.'s] primary and secondary education.

Record at 368–71. Both parents filed motions to correct error and the trial court granted in part and denied in part the cross motions, deleting the requirement in the dissolution order that Father maintain disability insurance during V.C.'s minority, and providing that Father could in the alternative provide that life insurance proceeds be irrevocably payable to a trust established for V.C.'s support, maintenance and education. The trial court then ruled that all other findings of fact and conclusions of law remained in full force and effect, including the contested findings above. From the trial court's modified judgment, Father now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Our standard of review for the interpretation of statutes is *de novo.* We review legal determinations to ascertain whether the trial court erred in application of the law. *Wagle v. Henry,* 679 N.E.2d 1002, 1005 (Ind.Ct.App.1997). Thus, we review the trial court's accompaniment requirement, which requires interpretation of Indiana statutes, *de novo.*

■ In addition, where special findings have been requested pursuant to Ind. Trial Rule 52, as occurred here, a two-tiered standard of review is utilized on appeal. First, the reviewing court must determine whether the findings are supported by the evidence. *Thompson v. Leeper Living Trust,* 698 N.E.2d 395, 397 (Ind.Ct.App.1998). Findings will be set aside if they are "clearly erroneous," that is, if the record contains no evidence to support them. *Id.* Second, the reviewing court determines whether the findings support the conclusions and judgment entered. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Monschein v. LaLonde,* 701 N.E.2d 1275, 1279 (Ind.Ct.App.1998).

### II. The Accompaniment Requirement

Father first maintains that the trial court's accompaniment requirement is contrary to state and federal statutes and constitutional law. Specifically, he argues that Indiana law allows restrictions on custodial parents only upon a finding that the child will be endangered in the absence of the restrictions. He further argues that the restriction is a violation of the Americans with Disabilities Act (ADA); however, he notes that he is not attempting to bring a claim under the Act. He also points to the Indiana Civil Rights Law (ICRL), arguing that it is also violated by the accompaniment restriction. Finally, he argues that the restriction violates his rights to due process and to equal protection under both the United States Constitution and the Indiana Constitution.

■ We note initially that IND.CODE § 31–17–2–17(b)(1) provides that in matters concerning a child's upbringing, including

the child's education, health care, and religious training, limitations may be imposed on a custodial parent only after a specific finding that "in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered." Furthermore, this court has addressed the role of a parent's disability in the analysis of the "best interest of the child." *In re Marriage of Lang,* 668 N.E.2d 285, 288–89 (Ind.Ct.App.1996). We adopted in *Lang* the reasoning of a California Supreme Court case, *In re Marriage of Carney,* 24 Cal.3d 725, 157 Cal. Rptr. 383, 598 P.2d 36 (1979), which stated that it was impermissible for a court to rely on a parent's physical disability "as prima facie evidence of the person's unfitness as a parent or of probable detriment to the child; rather in all cases the court must view the handicapped person as an individual and the family as a whole." *Id.* at 42. To do so, a trial court must examine the parent's "actual and potential physical capabilities, learn how he or she has adapted to the disability and manages its problems, consider how the other members of the household have adjusted thereto, and take into account the special contributions the person may make to the family despite—or even because of—the handicap." *Id.* Weighing these and all other relevant factors, a trial court must carefully determine whether the parent's condition will in fact have a "substantial and adverse effect on the best interest of the child." *Id.*

■ In this case, the trial court made no specific finding that V.C. would be endangered absent the restriction that it placed upon Father. Because the court did not make such a finding, it cannot require the presence of another adult "at all times" that Father cares for V.C. *See* I.C. § 31–17–2–17(b)(1). Thus, employing a *de novo* review, we find that the trial court misapplied or misinterpreted I.C. § 31–17–2–17(b)(1). We remand to the trial court with instructions to revise its Finding No. 41, particularly with regard to the accompaniment requirement. Because we decide this issue upon statutory grounds, we are not required here to consider the implications under the constitutions of Indiana or the United States. *See Indiana Wholesale Wine & Liquor Co., Inc. v. State ex rel. Indiana Alcoholic Beverage Com'n,* 695 N.E.2d 99, 106 (Ind. 1998) (if case can be decided on either a constitutional question or question of statutory construction, reviewing court will decide only the latter).

■ However, we note that the trial court's separate order that Father hire a nanny is merely an acknowledgement of Father's proffer to do so both at the temporary and permanent custody hearings. To claim that such an order contravenes statutes and constitutions in this context ignores the fact that Father invited the alleged error. A party may not request a procedure or submit to a procedure without objection and then claim the same to be erroneous. *Kennedy v. St. Joseph Memorial Hospital,* 482 N.E.2d 268, 275 (Ind. Ct.App.1985).[3] For this reason, we conclude that the trial court did not err in requiring Father to hire a nanny.

---

**3.** Moreover, implicit in offering to hire a nanny and informing the court that she will move onto the premises is the assumption that the nanny will be about the premises, if not in immediate proximity to Father and V.C. at all times. Indeed, counsel admitted at oral argument that both parties' counsels and the trial court could have agreed to a reasonable interpretation of the language of the accompaniment requirement as requiring the sorts of assistance that Father himself deems necessary.

However, we in no way intend for our skepticism in this case to be read as endorsing the notion that all non-sighted divorced parents will be required to employ nannies. This is not a possible outgrowth of the reasoning in *Lang.* On the other hand, we do not believe that a parent's constitutional rights, or their rights under the ADA and the ICRL, were intended as tools to legitimize invited error.

### III. Order to Pay Secondary School Expenses

Father next maintains that the trial court erred when it ordered him to pay for V.C.'s secondary educational expenses. Specifically, he argues that, pursuant to statute and case law, when making an educational support order, the trial court is required to take various factors into account, including the child's aptitude and ability, which the trial court cannot know in the case of a three-year-old child.

We note that IND.CODE § 31–16–6–2 [4] provides that an educational support order may include, where appropriate, amounts for the child's education in elementary and secondary schools, as well as institutions of higher learning. The statute provides that the following factors must be taken into account in awarding amounts for the child's private or post-secondary education:

(A) the child's aptitude and ability

(B) the child's reasonable ability to contribute to educational expenses ... and

(C) the ability of each parent to meet these expenses....

Furthermore, this court has found that public school education is a "necessary" for which expenses a parent has a legal duty to pay. *Morris v. Morris,* 92 Ind.App. 65, 66–67, 171 N.E. 386 (1930). In addition, however, we have ruled that an order that a non-custodial father pay "one-half of ... educational expenses" until his child reached age eighteen must be interpreted to mean one-half of "normal and ordinary" public school expenses, not private school expenses. *Moss v. Frazer,* 614 N.E.2d 969, 971 (Ind.Ct.App.1993). We found that the statute then in effect, I.C. § 31–1–11.5–12(b)(1), contemplated that the trial court would conduct a comprehensive analysis of factors, such as the child's aptitude and ability, prior to rendering a decision directing payment of private school expenses. *Id.* We further held that, when a child is three years old at the date of

dissolution, the court cannot yet consider such factors. *Id.* However, we also held that when the child has grown and the trial court is able to consider the child's aptitude and ability, it could modify its order to require the non-custodial parent to pay a portion of private school tuition. *Id.* at 972.

In contrast, our supreme court has also ruled that Indiana statutes do not permit a parent to seek an initial order for educational needs after a child is emancipated. *Martin v. Martin,* 495 N.E.2d 523, 525 (Ind.1986) (order to pay for educational needs may be continued, but not initiated, after child is emancipated). Thus, it is possible that parents seek such an order too early or, more unfortunately, too late. For this reason, we encourage parents to come to agreements for educational expenses as soon as possible.

In this case, we conclude that, based on both case law and statute, there must be either an agreement between parents or a court finding regarding the statutory factors discussed above before a court may order private school expenses to be paid post-dissolution. Father is correct in stating that without the court's consideration of the statutory factors, which is not possible for so young a child, the order is premature. *See Moss,* 614 N.E.2d at 971. We therefore remand to the trial court with instructions to delete the portion of this order which requires Father to pay any expenses beyond those expenses ordinarily associated with public school education through high school. However, we remand with the understanding that, at a later date when the court might properly make an assessment of the statutory factors, the entire matter can be taken up again.

### IV. Income Determination and Child Support Calculation

Father next maintains that the trial court erred in establishing his child sup-

---

4. Formerly I.C. § 31–1–11.5–12(b)(1).

port obligation at $250 per week. In particular, he asserts that there is no evidence to support the trial court's finding that his annual income was $500,000 instead of $398,000, the amount which appeared on his W-2 form in 1998. He further argues that the income attributed to Mother should be $30,000 annually, not $20,000. He then contends that the court erred in calculating his child support obligation, both because of the erroneous income calculation and because the court's order did not comply with the Indiana Child Support Guidelines.

We note initially that support orders must be made in compliance with the Indiana Child Support Rules and Guidelines. *Scott v. Scott,* 668 N.E.2d 691, 704 (Ind.Ct.App.1996). A deviation from the suggested child support guidelines is permissible only if it is supported by proper written findings justifying it. *Bussert v. Bussert,* 677 N.E.2d 68, 70 (Ind.Ct.App. 1997), *trans. denied.*

We note further that calculation of a parent's income for support purposes is more inclusive than for income tax purposes. *Weiss v. Frick,* 693 N.E.2d 588, 591 (Ind.Ct.App.1998), *trans. denied.* In particular, the trial court is vested with discretion regarding the validity of business expenses and deductions taken for tax purposes by a business owner. *Zakrowski v. Zakrowski,* 594 N.E.2d 821, 824 (Ind.Ct. App.1992). Child Support Guideline 3(A) defines weekly gross income to include "in-kind" benefits. The related commentary specifically discusses such benefits as housing and company cars. Child Support Guideline 3, Commentary 3(A)(2) acknowledges the difficulties in assessing income for the self-employed. Finally, Guideline 3(A)(3) provides that where a parent is voluntarily unemployed, the court shall calculate child support based on a determination of potential income. Potential income

is to be determined upon the basis of the work history, occupational qualifications, prevailing job opportunities, and earning levels in the community. *Castaneda v. Castaneda,* 615 N.E.2d 467, 471 (Ind.Ct. App.1993).

In this case, the trial court attributed $20,000 in income to Mother, who had earned as much as $27,500 prior to the dissolution order. However, Mother had stayed out of the work force for over four years prior to the dissolution order, with Father's agreement. R. at 1190. She had no specialized skills and had been recommended for job counseling. R. at 1005, 1025. We conclude that the trial court considered Mother's work history, occupational qualifications and prevailing job opportunities and earning levels, and found that $20,000 in annual income was attributable to Mother. *See Castaneda,* 615 N.E.2d at 471. Its finding is not clearly erroneous, and therefore we affirm.

Furthermore, the trial court had ample evidence to suggest that Father's income was $500,000 annually at a minimum. Father's declared income of $398,-000 is not the sole basis for determining his income. *See Weiss,* 693 N.E.2d at 591. In addition, the trial court had evidence that Father's corporation, of which he is the sole shareholder, provided him with a house and the use of several cars. R. at 985-86. Father testified that he rented the home and leased the cars from one of his corporations. R. at 986. However, there was evidence that he is not paying market rates. R. at 290, 986.[5] In addition, Father's Child Support worksheet did not list rent as an expense. R. at 288. Father does not pay utilities at his house; the corporation does. R. at 987. Furthermore, Father received other in-kind benefits from the corporation, including payment of the nanny's salary of $45,000 per year. R. at 980.[6] There was evidence

---

5. For example, Father pays $1,500 per month in rent for a house valued at $425,000.

6. We assume that the corporation paid several thousand dollars, in addition to the salary

that a private detective, hired to follow Mother and V.C., was paid over $10,000 by the corporation. R. at 980. We conclude that the evidence supported the trial court's Finding No. 46, which found that, including company benefits and the nanny's salary, Father had an annual income of $500,000 at a minimum. The trial court's judgment based upon this finding was not clearly erroneous.

▇▇▇▇ Next, we consider the resulting child support calculation contested by Father. We note first that the Child Support Guidelines do not contemplate shared custody determinations. *See* Child Support Guideline 6.[7] However, the purpose of the child support guidelines is to provide for the child in the same manner as if the parties had not divorced. *Lamon v. Lamon*, 611 N.E.2d 154, 158 (Ind.Ct.App. 1993). Furthermore, in reviewing a support order, the trial court's factual findings will not be found to be clearly erroneous unless the evidence contains no facts or reasonable inferences supporting the findings. *Marmaduke v. Marmaduke*, 640 N.E.2d 441, 443 n. 1 (Ind.Ct.App.1994), *trans. denied.*

▇▇▇▇ In this case, we have already decided that imputing income of $500,000 annually to Father and $20,000 to Mother is not completely erroneous and therefore we will not reverse these findings. Father has suggested alternate ways of calculating child support, given the shared custody order, which would reduce his child support payment. Appellant's brief at 31–32. However, they are based upon his preferred income attributions, and for this reason we do not find them persuasive. Rather, we find that the trial court deviated from the child support guidelines in a manner sufficiently justified by its findings. The trial court's order that a $389 per week support payment, without devia-

tion, be reduced to $250 per week, even considering its order that Father pay all of V.C.'s uninsured health costs, is not clearly erroneous in light of its finding that Father has 96% of the collective income while Mother has 4%. *See Marmaduke*, 640 N.E.2d at 443 n. 1 ("clearly erroneous" means that, despite evidence to support the trial court's judgment, record leaves reviewing court with firm conviction that a mistake was committed).

## V. Award of Shared Physical Custody

▇▇▇ Finally, Father contends that the trial court abused its discretion in awarding shared physical custody of V.C., splitting her time equally between Mother and Father. Specifically, he contends that neither party requested shared physical custody, that the Dissolution of Marriage Act contemplates only visitation rights to a non-custodial parent, and finally that the trial court's findings and conclusions related to the award of shared physical custody are not supported by the evidence.

I.C. § 31–17–2–8 provides that:

The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents

---

of $45,000, in order to cover related employment taxes.

**7.** Child Support Guideline 6 provides that the Child Support Guideline worksheet "does not address the problem of establishing support

in a split or joint custody situation.... These determinations are left to the sound discretion of the trial court for handling on a case by case basis...."

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

■ In addition to the statutory mandate that all relevant factors be considered in determining the best interest of the child, we note that the fact-finder is not required to accept the opinions of experts regarding custody. *Periquet–Febres v. Febres,* 659 N.E.2d 602, 607 (Ind.Ct.App. 1995), *trans. denied.*

■ We will not reverse the trial court's judgment unless its findings and its judgment are clearly erroneous, that is, that the reviewing court is left with the firm conviction that a mistake has been committed. *See Cox v. Cox,* 580 N.E.2d 344, 348 (Ind.Ct.App.1991), *trans. denied; Marmaduke,* 640 N.E.2d at 443 n. 1. We note that split physical custody is not prohibited by statute; indeed, the court is accorded wide discretion in custody decisions. *See* I.C. § 31–17–2–8 (court shall consider "all relevant factors" in determining custody in accordance with the best interests of the child). Furthermore, split physical custody is an acknowledged possibility in case law.[8] *See Terpstra v. Terpstra,* 588 N.E.2d 592, 594 (Ind.Ct.App.1992) (modification order stipulated that parties have "joint legal and physical custody" of their three minor children); *In re Marriage of Jackson,* 682 N.E.2d 549, 550 (Ind. Ct.App.1997) (dissolution decree ordered "joint physical custody").

In the instant case, the trial court made findings that, by both parent's agreement, Mother had been V.C.'s primary caretaker from her birth. R. at 364. The court found that neither parent delegated care of V.C., on any regular or continuing basis, to the persons hired to help take care of her. R. at 364. Furthermore, the court found that conflict and verbal arguments arising between the parents while they effectuated visitation had diminished by the time of the hearing. R. at 368. It noted that both parents believe it to be in V.C.'s best interest to have a healthy relationship with the other parent. R. at 365. The custody evaluator had recommended physical custody to Father and ample visitation by Mother.[9] R. at 648–649. However, the court found that the evaluator also admitted that the recommended visitation schedule was not feasible because Mother would have to seek full-time employment. R. at 365–66. The court noted several criticisms of the evaluator's work by another expert witness, including the fact that the evaluator's recommendation of primary physical custody to Father with visitation to Mother signified that preference should be given to a hired caretaker over Mother. R. at 366. The court also found that a detective hired by Father to follow Mother testified that, over a period of surveillance, Mother did not at any time act inappropriately with V.C. R. at 367. Furthermore, a former mother's helper testified that V.C. thrived in Mother's care. R. at 367. The court also noted that the custody evaluator's report was only a partial rationale to support the court's findings and that the court based its findings as well on the testimony of the parties, their witnesses, and the court's own observations of the parties during the pendency of the dissolution proceedings. R. at 375.

8. We note that when each parent has a share of physical custody, it has been referred to as "split" or "shared" or even "joint" physical custody, as our examples illustrate. In any event, we wish to note that our court recognizes arrangements other than primary physical custody to one parent and visitation to the other.

9. The evaluator recommended four hours of visitation per day. R. at 649.

For all of the above reasons, we conclude that the evidence supports the trial court's findings, and that the findings amply support a judgment of shared custody. The trial court's judgment is thus not clearly erroneous, and we affirm its custody award.

### CONCLUSION

In conclusion, we reverse and remand to the trial court the accompaniment restriction as written in Finding No. 41 with instructions to reconsider in light of I.C. § 31–17–2–17.  In addition, we remand to the trial court Finding No. 53 and Conclusion of Law No. 14 with instructions that they be limited to require only payment of public school expenses subject to modification if a petition for payment of private or college education is later filed.  We affirm the trial court's findings related to the calculation of parental income and of child support.  Finally, we affirm the trial court's award of split physical custody.

Judgment affirmed in part, and remanded.

SULLIVAN, J., and STATON, J., concur.