## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 09 2015, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Theora Ohaneson
Graber Law Firm, P.C.
Middlebury, Indiana

ATTORNEYS FOR APPELLEE

Rebecca Butler Power
Amber J. Bressler
Butler Power Law, P.C.
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Susan D. Troyer,<br>*Appellant,*<br><br>v.<br><br>Mervin D. Troyer,<br>*Appellee.* | June 9, 2015<br><br>Court of Appeals Case No.<br>20A04-1409-DR-445<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Evan S. Roberts, Judge<br><br>Cause No. 20D01-1212-DR-856 |

**Brown, Judge.**

[1] Susan Troyer ("Mother") appeals the trial court's order denying her Motion for Expedited Hearing on Transfer of School District for Minor Children. Mother raises three issues which we consolidate and restate as whether the trial court erred in denying Mother's motion. We affirm.

## Facts and Procedural History

[2] Mother and Mervin D. Troyer ("Father") were married on November 27, 1993. Two children, C.T., born December 7, 1997, and A.T., born January 19, 2001, were born of the marriage. On December 3, 2012, Mother filed for dissolution of marriage in the Elkhart Superior Court. On February 21, 2013, the court entered a temporary order that Mother and Father be granted joint legal custody of the children with Mother having primary physical custody. The court held hearings on July 3, 9, and 10, 2013. At these hearings, Father, Mother, Father's brother, the children's maternal grandparents, a school psychologist, and others testified.

[3] Meanwhile, on July 9, 2013, Mother filed a verified notice of intent to relocate to LaGrange, Indiana. On July 11, 2013, Father filed a motion to prevent relocation of children and objection to notice of intent to relocate. On July 12, 2013, the court entered a supplemental temporary order which stated:

> After consideration of the fact that the children have attended the Goshen Community School and [Mother] admittedly is employed as a substitute teacher at the Goshen Community Schools, pending further Order of the Court, the children shall be enrolled in the Goshen Community School system for the 2013/2014 school season. All transportation and/or costs associated with the children attending the Goshen Community School shall be provided by [Mother].

Appellee's Appendix at 7. An entry in the chronological case summary ("CCS") dated July 16, 2013, scheduled a status conference for August 22, 2013, to address the motion and objection on the issue of relocation. On July 17, 2013, the court conducted an in camera hearing with the children. The court, on its own motion under Ind. Trial Rule 52, ordered the parties to file proposed findings of fact and conclusions of law by August 30, 2013.

[4] On August 22, 2013, the court held a status conference. Mother's counsel argued in part that "[t]oday Caucasians are less than 50 percent at Goshen High School and LaGrange High School is much more of an environment that the children would be used to." *Id.* at 19. The court took the issue of relocation under advisement.

[5] On November 1, 2013, the court entered an Order on Pending Motions and Final Decree of Dissolution of Marriage. The court awarded Mother sole legal and physical custody of the children subject to Father's parenting time. In its findings of fact, the court stated:

### Relocation

28. [Mother] submitted to the Court 7/9/2013, [Mother's] Verified Notice of Intent to Relocate Pursuant to Indiana Code I.C. § § 31-17-2.2. [Father] submitted an Objection, 7/11/2013, alleging a violation of the statute for notification of relocation. The Court held a hearing 8/22/2013. [Father] submitted as a part of [Father's] Proposed Findings of Fact and Conclusions of Law, 8/30/2013, a section on relocation. [Mother] filed Objection to Submission on Relocation 9/5/2013, asking the Court to strike that portion of [Father's] Findings based on the Court's representations during the hearing.

29. [Mother] was required by the Agreement to vacate the marital home.

30. [Mother] purchased a home in LaGrange – in a separate county and school system – and moved there after vacating the marital home. The new home is about thirty (30) minutes from the marital residence.

31. [Mother] had sought and purchased the home prior to filing the notice of relocation. She moved the children 3 days after informing [Father] and prior to the filing of notice.

32. [Father's] objection was summarized in his proposed findings and conclusions as:

> He objects to [Mother] moving without complying with the Indiana statute. He objects to [Mother] telling the children to keep the property search and move a secret. He did not object to [Mother] moving. He objected to her moving the children at a time when they had temporary joint legal custody without the notice afforded to him by statute.

33. [Father] is concerned about the possible change of school systems from Goshen to Lakeland occasioned by [Mother's] move.

34. [Mother] argues she prefers Lakeland because there are more Caucasian, farm families.

35. The Court issued a temporary order, 7/12/2013, mandating that the children attend Goshen Community Schools for the 2013/2014 school season, where the children had attended their entire lives.

36. At the hearing 8/22/2013, the Court stated there has been no final custody order in this case, and so these issues may be premature. The Court stated that it was not prejudging the issues, but needed to consider everything before the Court. The Court specifically stated that it was not deciding on the motions at the hearing.

37. Additionally, at the 8/22/2013 hearing, the Court informed the parties that it received an unsolicited letter from [A.T.], but had not read the letter. By agreement of the parties the letter was sealed. Neither the Court nor the parties or attorneys have read the letter from [A.T.].

Appellant's Appendix at 24-25. In its conclusions, the court ordered:

## 4. Parenting Time/Visitation

\* \* \* \* \*

15. The Court appoints Mary Raatz as a Guardian Ad Litem/Parenting-Time coordinator at this time. The parties expressed concern about the receipt of the letter from [A.T.]. As the Court does not know the contents of said letter, the Court finds it is in the best interests of the children to have a third-party to communicate with regarding issues in this cause. All costs associated with Mary Raatz shall be born equally between [Father] and [Mother] unless otherwise ordered by the Court. Additionally, the parties are directed to contact the GAL within 14 days. After the initial contact is made, the attorneys of record are prohibited from contacting, directly or indirectly, the GAL unless the contact is initiated by GAL. Notwithstanding, the parties are permitted to reasonably contact the GAL on the issue of parenting time as appropriate. Also, the attorneys of record are permitted to provide the GAL with a concise introductory letter containing a statement of facts and their position to assist the GAL in understanding the issue(s).

16. The children will be allowed to communicate directly with Mary Raatz.

\* \* \* \* \*

## 5. School System

19. Considering the desires of the children, the Court makes the temporary order for the children to attend Goshen Community Schools permanent, finding it to be in the children's best interest in that the children are excelling there, have always attended school there, are involved in many extra curricular [sic] activities there, and that diversity creates well-rounded children. Except as noted herein with respect to [Father's] mid-week parenting time, [Mother] shall be exclusively responsible for transportation to and from school.

\* \* \* \* \*

## 11. Relocation

\* \* \* \* \*

58. The Court . . . determines that the statute on relocation does not apply to this case because no final hearing on the merits of custody had taken place.

59. Because the statute on relocation does not apply, [Mother's] failure to follow it is irrelevant.

60. The Court further notes that even if the provisions apply [Father] objected not to the move, but the failure to follow the statute. [Mother] was required to move as a part of the property settlement, as [Father] was awarded the [marital] residence. [Mother] is only 25 miles from her previous address. Additionally, as the Court explicitly told the parties on the record, [Father's] real objection seems to lie with [Mother] moving out of Elkhart County; not [Mother] moving out of the former marital residence.

61. [Father's] further objection to the school system change is currently moot as this Court ordered the children to attend Goshen Community Schools.

62. The Court therefore declines to take any further action regarding [Mother's] relocation.

*Id.* at 32-34, 38-40 (footnotes omitted).[1] The court noted that both children are tightly integrated into the Goshen community and have been since their birth. *Id.* at 34 n.6.

[6] On December 2, 2013, Father filed a motion to correct error, and Mother subsequently filed a response to Father's motion on December 5, 2013.[2] On December 31, 2013, the court held a hearing and took the matter under advisement. On January 14, 2014, guardian ad litem Raatz ("GAL Raatz") filed a report which stated in part:

---

[1] We note that the pages in the Appellant's Appendix are not included in chronological order.

[2] The record does not contain a copy of Father's motion to correct error.

The other major issue discussed by all is [C.T.'s] and [A.T.'s] desire to attend Lakeview schools rather than Goshen. [A.T.] and [C.T.] have attended Goshen schools since kindergarten and are doing well academically. Both children complained about having to wake up early to get from LaGrange to Goshen for school. They also want to make friends in LaGrange and believe changing schools is the only way for this to happen.

It is unfortunate [Mother] decided to move to LaGrange rather than finding a suitable home within the Goshen school system. However the situation is what it is at this point. [Father] wants the children to remain at Goshen so he can attend events. [Father's] argument is unconvincing as he has not attended events in the past.

It is certainly more difficult for the kids to be attending Goshen as they have to ride about 30 minutes from home to school. [Father] reported that he believes [C.T.] and [A.T.] spend a significant number of school nights at the home of their maternal grandparents so they can ride the bus and [Mother] does not have to drive them. [Father] believes they should be spending the nights with him if this is the case.

The issues in this family will not be easily addressed. [A.T.] and [C.T.] made impassioned pleas to be allowed to change schools. I am not sure either one of them fully realize how difficult it can be to change schools. This is a matter that [Mother] did not consider when she moved to LaGrange. I believe [Mother] has painted a rosy picture of changing schools for [C.T.] and [A.T.]. Regardless they both insist this is what they want.

I recommend the following:


* * * * *


5. It is difficult to make a recommendation on a change in schools. [C.T.] and [A.T.] state they want to become a part of their new community and attending school in LaGrange would allow for this. That is a good argument. I am not sure how much they are being influenced by [Mother]: I suspect a great deal.

I do not see any harm in changing schools. [C.T.] and [A.T.] are solid students and I am sure this would continue in whichever school they attend. My bigger concern is that [C.T.] and [A.T.] have an idealized

vision of Lakeview and the degree to which attending there would improve their lives.

*Id.* at 51-52.

[7] On February 26, 2014, the court entered an order on Father's motion to correct error.[3]

[8] On July 28, 2014, GAL Raatz filed a letter with the court which stated that there was some confusion as to the court's order that the children remain in Goshen schools. The GAL indicated that Father believed that the court's intention was for the children to remain in Goshen schools until graduation, and Mother believed that the order was to last through the school year ending in June 2014. The letter states:

> [The children] have both expressed their strong desire to attend Lakeland schools in LaGrange where they reside. They reason that they would like to be involved in activities in LaGrange and would like to become a part of that community. In addition, [C.T.] and [A.T.] believe it will be very difficult for them to be involved in extra-curricular activities in Goshen as it is a lengthy drive from LaGrange.
>
> [Father] wants [the children] to remain in Goshen schools because it will be easier for him to attend their activities. It must be noted that [Father] rarely attended the children's events prior to the divorce, but that seems to be important to him now.
>
> [The children] are bright young people and I believe their desire to attend school in LaGrange is sincere. [A.T.] especially is confused as to why [Father] is now so interested in her schooling and activities when he was indifferent for many years. [The children] have done

---

[3] The record does not contain a copy of the order.

well in Goshen schools and are well established there. Their argument of not being involved in activities due to the distance is reasonable.

It is my concern that [the children] will be angry with [Father] if they have to continue to attend Goshen schools. The relationship between [Father] and children is still fragile and [A.T.] especially sees [Father's] desire to keep her in Goshen schools as more a way to be disagreeable with [Mother] rather than doing what he believes is best for [A.T.].

*Id.* at 46-47. GAL Raatz also asked: "As the beginning of the school year is nearing, I respectfully request the clear [sic] the question of where [the children] are to attend school." *Id.* at 47.

[9] On July 30, 2014, the court entered an order stating: "After review and consideration of the record, the Court enters the following Order: . . . The minor children shall continue to attend Goshen Community Schools pending further order of the Court . . . ." *Id.* at 18.

[10] On August 1, 2014, Mother filed a Motion for Expedited Hearing on Transfer of School District for Minor Children. Mother alleged that her counsel attempted to "schedule a 4-way with counsel for Father, but was told that Father desired for the children to attend Goshen schools, and that the Judge had ruled, and therefore was not interested in a 4-way conference." *Id.* at 16. Mother also alleged that the children desired to be able to participate in extracurricular activities, which was not feasible while attending Goshen Community Schools and that Indiana case law would support that the children attend the school district in which the custodial parent lives. Mother requested an expedited hearing.

[11] A CCS entry dated August 5, 2014, states: "Hearing scheduled on August 21, 2014 at 8:30 a.m. with (15) minutes ONLY reserved." *Id.* at 9. On August 5, 2014, Father filed a response to Mother's motion. On August 7, 2014, the court rescheduled the hearing to August 25, 2014 at 8:30 a.m. "with (15) minutes reserved." *Id.* On August 12, 2014, Mother filed a motion for discovery in the best interest of the children along with a proposed form of order.[4] A CCS entry dated August 14, 2014, states: "The Court indicates it will hear argument on this matter on August 25, 2014 at 8:30 a.m. in conjunction with other pending matters. The Court reserves **15** minutes for said matter." *Id.* at 10.

[12] On August 25, 2014, the court held a hearing and swore in Mother and Father. The court stated that it received unsolicited correspondence from Jan Desmarais-Morse at Goshen Middle School. Father's counsel objected to the consideration of the correspondence because it was not a business record and was prepared in anticipation of the litigation. Father's counsel characterized the correspondence as a letter from the school counselor in support of Mother's position. Mother's counsel argued that the letter had nothing to do with Mother and related to A.T. and that it would be "absolutely wrong not to consider a child of that age and understand what the counselor has seen." Transcript of August 25, 2014 Hearing at 5-6. The court asked whether the correspondence should be directed to GAL Raatz, Father's counsel agreed, and Mother's counsel argued that she thought that GAL Raatz was appointed as a

---

[4] The record does not contain a copy of Mother's motion for discovery or proposed order.

coordinator only, and the court clarified that she was the guardian ad litem. GAL Raatz stated that she just received the letter that morning, did not have her glasses, and would rather not comment at that point. Mother's counsel asked if the court could give GAL Raatz time to read the correspondence and come back and report what she read, and the court responded that she could do so and could file a report.

[13] After some discussion, GAL Raatz stated:

> I can say [C.T.] and [A.T.] have both been very clear with me about their desire to attend Lakeland High School. You know, they've been very clear. They strongly want to do that. And they have some legitimate reasons for wanting to do that. My last report was simply to clarify for myself whether the Court's order was in fact temporary or permanent so we could move forward with the school year.

*Id.* at 13.

[14] Mother's counsel argued that the court's previous orders never stated that the selection of the children's school would be for all school years and that the motion was filed because of the children's age, their request to attend Lakeland School, and because Mother has sole legal and physical custody. Mother's counsel also asserted that attending school in Goshen was a hardship for the children and asked the court to allow an in camera interview with the children.

[15] Mother's counsel then stated that the "superintendent of schools" was going to be there that day, GAL Raatz said that she thought the superintendent was in the hallway, and the court stated: "Before we call anybody in we're not going to

take any testimony, not on a Monday morning. I don't know how many cases I have but I know it's a lot." *Id.* at 22. Mother's counsel stated:

> Okay. I just want – the superintendent of the schools is here because they do have a policy that you can't just attend the Goshen schools like Elkhart does and all the other schools around here do. Goshen schools has a different policy that they don't just automatically – if you're not the custodial parent you can't just automatically send your kids there so there was a dilemma in regards to that. It has to go to a school board meeting, which it did. And I did have her come so that she could explain that in case that's the only thing I wanted to explain.

*Id.*

[16] After further discussion, Father's counsel argued that Father wants consistency and continuity for the children and that the court had already heard two and a half days of testimony on this issue. Mother's counsel argued: "I think there's a letter coming also from the son's counselor and there was one from the daughter's counselor . . . ." *Id.* at 30-31. Mother's counsel also asked the court to talk to the children's counselors and the children. Father's counsel argued that the court did not need to do a third in camera interview with the children and that there had been no change in circumstances that made the current order not in the children's best interests.

[17] GAL Raatz stated:

> I will state, again, [A.T.] and [C.T.] have both been very clear with me that they want to attend Lakeland schools. Their reasons for wanting this are that they want to feel more a part of the community, they want to be able to participate in activities within the school community in Lagrange. They don't want to have to drive an hour everyday to and

from school. I don't know as most kids, I think they're probably seeing the best side of things but these are two smart kids. I mean, these are not – you know, they're pretty smart kids and I think their desire to attend Lakeland school is sincere, yet the Court has made a decision and part of one of the lessons we all learn as we mature is that we don't always get what we want and sometimes we don't understand why we can't have what we want. That's a life lesson that we all have to learn. So while I think [A.T.] and [C.T.] are very sincere in their desire to attend Lakeland, I think they are confused as to why that can't happen. I definitely think that regardless of the outcome both of these kids need to be in a therapeutic environment.

*Id.* at 34. The court took all pending matters under advisement.

[18] On September 19, 2014, the court entered an Order on Pending Matters. The court's order states:

> The real issue before the Court is straightforward. [Mother] wants to enroll the minor children in the Lakeland school system. Having moved twenty miles from Goshen to LaGrange for various reasons, [Mother] again argues the children's continuing connections to the Goshen community is inconveniently far away and should be severed. The Court has already decided this matter and [Mother] seeks to reargue the issue.

Appellant's Appendix at 11. The court then reviewed the procedural history and stated:

> As a result, the Court, after reviewing the new report from the Guardian Ad Litem, issued an Order on 7/28/2014 confirming its decision in the 11/1/2013 Final Decree that the children shall attend school in the Goshen system until further order of the Court.
>
> [Mother] filed a Motion for Expedited Hearing on Transfer of School District for Minor Children less than one week later on 8/1/2014. That Motion did not allege any new facts; nor were any new facts

argued at the 8/25/2014 hearing; noting that the Court only heard arguments and no evidence. With this background in mind, the Court enters the following Order:

The Court notes [Mother] moved to LaGrange with the children in summer 2013. Before this move, the children had lived their whole lives in Goshen. The children attended church and participated in extracurricular activities in Goshen prior to summer 2013. The children have always attended school in the Goshen school system. The marital residence, where [Father] still resides, is located in Goshen and, the maternal grandparents, with whom the children have a very close relationship, are located in Goshen not far from [Father's] residence. The children are ages 13 and 16, and are female and male, respectively. Both children have expressed a sincere desire to attend Lakeland schools. [Mother] has strongly influenced the children's wish to attend Lakeland schools.[5] The children have excelled in Goshen schools. [Mother] did not consider how difficult it would be for her children to transition to a new school when she decided to move to LaGrange. The commute between [Mother's] home and the children's schools in Goshen takes approximately 30 minutes.[6] Admittedly, the children have not been involved in extracurricular activities to the same extent as when they lived in Goshen.

IC 31-17-2-17 states that

(a) Except . . . as provided in subsection (b); the custodian may determine the child's upbringing, including the child's education, health care, and religious training.

(b) If the court finds after motion by a noncustodial parent that, in the absence of a specific limitation of the custodian's authority, the child's

---

[5] On this subject, GAL Raatz noted "It is difficult to make a recommendation on a change in schools. [The children] state they want to become a part of their new community and attending school in LaGrange would allow for this. That is a good argument. I am not sure how much they are being influenced by [Mother]; I suspect a great deal." ¶5, GAL Report 1/14/2014.

[6] [Mother] argues that a 30 minute commute causes the children to lose sleep and results in their inability to participate in extracurricular activities. The Court notes that a 30 minute commute to school in rural school districts in this area is not excessive, or even unusual. Inconvenience with respect to the commute – regarding the children's inability to participate in extracurricular activities – is a consideration, albeit small, when it comes to deciding the issue before the Court.

(1) physical health would be endangered; or

(2) emotional development would be significantly impaired;

the court may specifically limit the custodian's authority.

The courts have interpreted "custodian" in the context of IC 31-17-2-17 to mean legal custodian of the child. Here, [Mother] has sole legal custody of the children. Upon [Father's] motion objecting to the change of school system, and in consideration of the children's extensive connections with Goshen, including family and friends, and the benefits of diversity in education, the Court decided that further isolating the children from the Goshen community by allowing [Mother] to enroll the children in Lakeland schools would significantly impair the emotional development of the children. Consequently, the Court ordered that the children continue to attend Goshen Community Schools.

In order to modify a child custody order, the Court must find that doing so is in the best interest of the child and that there is a substantial change in one of the factors listed in IC 31-17-2-8. Preserving the children's connections to the Goshen community, in spite of the familial upheaval, by their continued attendance of Goshen schools is in the best interest of the children. In addition, [Mother] has not alleged, and the Court has not found, that a significant change in any of the factors listed in IC 31-17-2-8 has occurred since the Final Decree containing the custody order was entered. Accordingly, [Mother's] request for a modification of the custody order is therefore DENIED.

\* \* \* \* \*

As the issue regarding modification of the custody order has been decided, the Court finds that the parties' filings relating to discovery . . . are moot.

*Id.* at 13-15 (some footnotes omitted).

*Discussion*

[19] The issue is whether the trial court erred in denying Mother's Motion for Expedited Hearing on Transfer of School District for Minor Children. In her initial brief, Mother argues that: (A) the trial court erred by ruling contrary to the requirements of Ind. Code § 31-17-2-17 when no motion had been filed to limit her authority as to education as the sole legal custodian; (B) the court erred when it did not allow new evidence to be presented contrary to the doctrine of completeness; and (C) it was unreasonable to require Mother to transport the children to a public school outside of the school district where they reside. In her reply brief, Mother argues that she did not know that the November 1, 2013 order was to limit her sole legal custody until GAL Raatz wrote the letter requesting an explanation and the court admitted there was a misinterpretation of the court's decree. She also contends that at no time during the trial or in the final decree did the court state that her authority as to education would be limited. Lastly, she clarifies that she is not attempting to modify custody, but is requesting only that Ind. Code § 31-17-2-17 be followed when granting her sole legal custody.

[20] We initially note that it is well established that the trial court has statutory authority to determine custody and enter a custody order in accordance with the best interests of the child. *See* Ind. Code § 31-17-2-8. Further, in determining the best interests of the child, the trial court shall consider all relevant factors, including the age and sex of the child, the child's adjustment to the child's home, school, and community, and the mental and physical health

of all individuals involved. *See id.* We further note, as the Indiana Supreme Court stated:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

[21] We also observe that the court's November 1, 2013 order made the temporary order for the children to attend Goshen Community Schools permanent, and Mother did not appeal this order. After GAL Raatz requested clarification on where the children would attend school, the court entered an order on July 30, 2014, that the children continue to attend Goshen Community Schools, and Mother did not appeal this order. Her appeal is from the September 19, 2014 order.

A. *Ind. Code § 31-17-2-17*

[22] Mother's argument is that the trial court improperly limited her authority under Ind. Code § 31-17-2-17 as the custodial parent by ordering that the children attend school in Goshen. She asserts that there was no motion to limit her authority or finding of any evidence to support an emotional impairment of the children. Father argues that the trial court properly limited Mother's authority

and that he did request that the children attend Goshen schools which was a request to limit her authority as legal custodian. Father also claims that the trial court could not usurp Mother's authority with regard to school enrollment because Mother was never given the authority to determine which school system the children would attend. In other words, Father points out that he and Mother had joint legal custody until the November 1, 2013 order, which awarded her sole legal custody and also ordered that the children remain enrolled in the Goshen Community Schools.

[23]    Ind. Code § 31-17-2-17 provides:

> (a) Except:
>
>> (1) as otherwise agreed by the parties in writing at the time of the custody order; and
>>
>> (2) as provided in subsection (b);
>
> the custodian may determine the child's upbringing, including the child's education, health care, and religious training.
>
> (b) If the court finds after motion by a noncustodial parent that, in the absence of a specific limitation of the custodian's authority, the child's:
>
>> (1) physical health would be endangered; or
>>
>> (2) emotional development would be significantly impaired;
>
> the court may specifically limit the custodian's authority.

[24]    The record reveals that Father requested that the trial court require the children to continue to attend Goshen Schools in his motion to prevent relocation. The court awarded Mother sole legal and physical custody of the children in the November 1, 2013 order, and that same order made permanent the temporary order that the children attend Goshen Community Schools. Further, the court

specifically discussed Ind. Code § 31-17-2-17 and found in its September 19, 2014 order:

> Upon [Father's] motion objecting to the change of school system, and in consideration of the children's extensive connections with Goshen, including family and friends, and the benefits of diversity in education, *the Court decided that further isolating the children from the Goshen community by allowing [Mother] to enroll the children in Lakeland schools would significantly impair the emotional development of the children.* Consequently, the Court ordered that the children continue to attend Goshen Community Schools.

Appellant's Appendix at 14 (emphasis added). Thus, the trial court made the required finding under Ind. Code § 31-17-2-17.

[25] To the extent Mother relies upon *Clark v. Madden*, 725 N.E.2d 100 (Ind. Ct. App. 2000), we find that case distinguishable. Mother argues that in *Clark* this Court referred to Ind. Code § 31-17-2-17 and held that limitations may be imposed on a custodial parent only after a specific finding that in the absence of a specific limitation the children's emotional development would be significantly impaired. We held that the trial court made no specific finding that the child would be endangered absent the restriction that it placed upon the father and that, because the court did not make such a finding, it could not require the presence of another adult at all times that the father cared for the child. 725 N.E.2d at 105. Here, the court made the required finding of impairment. Thus, we cannot say that reversal is warranted.

*B.     Doctrine of Completeness*

[26]     Mother argues that the trial court abused its discretion or committed error when it did not allow testimony or evidence at the August 25, 2014 hearing and that this was contrary to the doctrine of completeness.  Father argues that the trial court did not violate the doctrine of completeness.  Father asserts that Mother's motions did not allege any change in circumstances requiring the court to hold an evidentiary hearing, and that the doctrine of completeness does not mandate or permit re-litigation of issues that have already been properly adjudicated. Father asserts that no statements or writings were introduced at the August 25, 2014 hearing so the doctrine of completeness could not apply.  Father cites Ind. Code § 31-17-2-21(c) in support of his position that the trial court was forbidden from hearing evidence on a matter occurring before the last custody proceeding.[7]

[27]     The doctrine of completeness is a common law doctrine that "[w]hen one party introduces part of a conversation or document, the opposing party is generally entitled to have the entire conversation or entire instrument placed into evidence." *Lewis v. State*, 754 N.E.2d 603, 606 (Ind. Ct. App. 2001) (quoting *McElroy v. State*, 553 N.E.2d 835, 839 (Ind. 1990)), *trans. denied*.  The doctrine of completeness has been incorporated into the Indiana Evidence Rules as Evidence Rule 106.  *Norton v. State*, 772 N.E.2d 1028, 1033 (Ind. Ct. App.

---

[7] Ind. Code § 31-17-2-21(c) provides: "The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 and, if applicable, section 8.5 of this chapter."

2002), *trans. denied*. The rule states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Ind. Evidence Rule 106.

[28] Mother's position is that the doctrine of completeness applies to the trial court's failure to admit the letter from Jan Desmarais-Morse at Goshen Middle School into evidence and the testimony of the superintendent. We observe that the court indicated that GAL Raatz could take a look at the letter from Jan Desmarais-Morse and then file a report if she deemed it necessary. The superintendent did not testify, and the doctrine of completeness did not require the trial court to hear such testimony. Further, Mother's counsel explained that the purpose of the presence of the superintendent was to explain the school's policy. To the extent that Mother suggests the court failed to consider the children's desires, the record reveals that the trial court had already been informed of the children's desires to not attend school in Goshen. Appellant's Appendix at 17. Specifically, the trial court had conducted an in camera interview with the children on July 17, 2013, and was informed of the children's desires by GAL Raatz in her January 14, 2014 report and her statements at the hearing. We cannot say Mother has demonstrated that reversal is warranted on this basis.

### C. *Transportation of Children*

Mother also asserts that the travel is a hardship for the children and for herself, and that it takes at least forty minutes one-way. The court's September 19, 2014 order addressed distance and found that the "commute between [Mother's] home and the children's schools in Goshen takes approximately 30 minutes." Appellant's Appendix at 13-14. The court also noted:

> [Mother] argues that a 30 minute commute causes the children to lose sleep and results in their inability to participate in extracurricular activities. The Court notes that a 30 minute commute to school in rural school districts in this area is not excessive, or even unusual. Inconvenience with respect to the commute – regarding the children's inability to participate in extracurricular activities – is a consideration, albeit small, when it comes to deciding the issue before the Court.

*Id.* at 14 n.9. We cannot say that the court's finding on this point was erroneous.

### *Conclusion*

For the foregoing reasons, we affirm the trial court's order denying Mother's motion.

Affirmed.

Crone, J., and Pyle, J., concur.