Maria D. CARRASCO, Appellant–Petitioner,

v.

David M. GRUBB, Appellee–Respondent.

No. 53A01–0410–CV–453.

Court of Appeals of Indiana.

March 29, 2005.

Rehearing Denied June 30, 2005.

Robert W. Beck, Bloomington, IN, Attorney for Appellant.

Susan H. Nelson, Chapman & Nelson, Bloomington, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Maria D. Carrasco appeals the trial court's order granting a permanent change of custody of her minor child, T.G.—born on February 19, 1990— to her and her husband and T.G.'s father, appellee-respondent, David M. Grubb. Specifically, Carrasco argues that: (1) the Guardian Ad Litem's (GAL) participation in the proceedings was not authorized by law; (2) she should have been permitted to withdraw from the temporary custody agreement because she was coerced into the arrangement; (3) the trial court abused its discretion in striking Carrasco's request for a hearing on the voluntariness of her agreement to a temporary change of custody; (4) it was an abuse of discretion for the trial court to have awarded attorney's fees to Grubb; and (5) the trial court's adoption of the GAL's proposed findings of fact and conclusions of law was erroneous in light of the evidence that was presented in this case.

We conclude that the GAL's participation in these proceedings was lawful, and that Carrasco has failed to demonstrate that she was coerced into a temporary custody arrangement. We further find that the trial court granted her a hearing on this issue, and that it properly ordered Carrasco to pay a portion of Grubb's attorney's fees. Finally, we conclude that the trial court's findings were sufficient to support the permanent change of custody.

## FACTS

In March 2002, Carrasco petitioned for dissolution of her marriage to Grubb. Two children—T.G. and M.G.—were born to the marriage. At some point during the proceedings, Carrasco requested the appointment of a GAL to represent the best interests of the children. Pursuant to that

request, the trial court issued an order appointing Jane Barden as GAL in association with the Indiana University Law School's Child Advocacy Clinic (the Clinic) in September, 2002. In accordance with the trial court's order, Barden's services were to "include, but [were] not exclusive of researching, examining, advocating, facilitating and monitoring the children's situation." Appellant's App. p. 20.

Barden proceeded to conduct an investigation regarding M.G. and T.G.'s circumstances, and she filed a report with the trial court on December 9, 2002. She found that "the children were suffering deeply as a result of their parents' conflict." Appellee's App. p. 1. As a result of this report, Grubb and Carrasco entered into an agreement settling the dissolution matters. The trial court then entered a final agreed order on December 19, 2002, that granted Carrasco sole physical custody of both children.

Shortly after the dissolution had become final, Carrasco began to experience severe difficulties with regard to T.G.'s behavior. As a result, Carrasco contacted Barden for assistance, because she was under the belief that Grubb was "encourag[ing T.G.] to act and talk in an incorrigible way." Appellant's App. p. 165. Carrasco also maintained that she was experiencing "significant strife and crisis" on account of T.G.'s behavior. Appellant's App. p. 165. However, Carrasco eventually became irritated with Barden and believed that she was becoming "intrusive rather than helpful." Appellant's Br. p. 7. Upon further investigation, Barden eventually urged that sole custody of T.G. be changed to Grubb.

In May 2003, Carrasco and Grubb met with Barden to discuss parenting arrangements, where they agreed that T.G. would spend the final two weeks of school with Grubb. The parties agreed that Carrasco was to have sole physical custody of M.G.

However, T.G. refused to see Carrasco or even speak with her on the telephone. When both children were to be returned to Carrasco's home in accordance with the agreement, T.G. remarked that Barden informed him that he did not need to speak to his mother "until he felt comfortable." Appellant's App. p. 167. Barden did admit relaying this information to T.G.

Barden then filed a "Report of the Guardian Ad Litem" in September 2003, "recommending" that Grubb should have sole legal and physical custody of T.G. Appellant's App. p. 115. The report set forth the GAL's concern about the high level of conflict between the parents, each parent's skills and the impact that the ongoing conflict was having on the children. Barden's attorney sought a hearing, which the trial court treated as the GAL's petition to modify the custody order. Then, on July 29, 2004, Barden's counsel acknowledged that she had filed the report advocating a change of custody.

At a conference involving the attorneys and the trial judge, Carrasco proposed that the children should be permitted to stay with her mother for a while. Barden's counsel objected to that idea, and the trial court considered placing the children in foster care. However, T.G. was temporarily placed with Grubb and, at a later hearing, the GAL's counsel urged that granting custody of T.G. to Grubb should be made permanent. While the trial court declined to make the order permanent, it left T.G. in Grubb's temporary custody pursuant to an order that was issued on September 24, 2003. The order provided that Carrasco was to have sole legal and physical custody of M.G., and Grubb was to have sole legal and physical custody of T.G. The order also set forth a parenting time schedule, and sanctions were listed in the event that the parties did not comply with the trial court's directive. The family

was also ordered to undergo counseling, and Grubb and Carrasco were to attend a program in Indianapolis that dealt with high conflict custody situations. Finally, this order provided for a review hearing on October 27, 2003.

Approximately one month later, Carrasco moved to strike Barden's report as unauthorized and inappropriate under the relevant Indiana statutes. She also sought to repudiate her prior agreement to the temporary change in custody. The trial court struck these motions—along with several others that had been filed—and quashed Carrasco's subpoenas when she sought to depose Barden and her attorney. Carrasco filed a motion to correct error and thereafter requested that the trial court rule on that motion without a hearing. This motion was denied, and the cause remained set for a hearing on April 29, 2004. However, on April 5, 2004, Carrasco filed a Notice of Appeal with regard to the Agreed Temporary Custody Order that had been dated September 24, 2003. The trial court then denied Carrasco's motion to correct error, and we determined that the Agreed Temporary Custody Order was "not a final appealable order." Appellant's App. p. 14.

On May 12, 2004, the Clinic moved to dismiss the appeal with this court. We determined that the Clinic had standing to bring the motion to dismiss, and we further concluded that the appeal had to be dismissed because there was no final appealable order at that time.

In the end, the trial court ordered Carrasco to pay $1600 in attorney's fees to Grubb's counsel. Thereafter, on September 29, 2004, the trial court entered an order making permanent the change in custody of T.G. to Grubb. The trial court found that the GAL had acted within her authority at all times and that she was an appropriate party to the proceedings. Carrasco now appeals.

## DISCUSSION AND DECISION

### I: Participation Of the GAL

■ Carrasco argues that the custody order must be set aside because the GAL acted as an "officious intermeddler" in the post-dissolution proceedings. Appellant's Br. p. 12. She urges that the proceedings leading up to the final custody order were void ab initio, unauthorized by statute and in complete derogation of both Indiana statutory and decisional law, as well as Carrasco's well-established constitutional rights as a custodial parent. To be sure, Carrasco argues that the order awarding permanent custody of T.G. to Grubb must be vacated because the proceedings constituted an unlawful attempt to relitigate the original custody decree.

In addressing Carrasco's contentions, we note that Indiana Code section 31–15–6–4 provides that a GAL is required to serve until he or she is excused by the trial court. See also Deasy–Leas v. Leas, 693 N.E.2d 90, 93 (Ind.Ct.App.1998), trans. denied. Additionally, Indiana Code section 31–15–6–1 provides that in a dissolution action, a GAL may be appointed by the court "at any time." And the trial court may order a GAL "to exercise continuing supervision over the child to assure that the custodial or visitation terms of an order entered by the court ... are carried out as required by the court." I.C. § 31–15–6–8. Once the GAL is appointed, his or her role as defined in Indiana Code section 31–15–6–3 is to represent and protect the best interest of a child, and to provide the child with services requested by the court, including "researching, examining advocating, facilitating and monitoring the child's situation." Ind.Code § 31–9–2–50.

In accordance with the above, a GAL's responsibilities are not dependent upon the stage of the proceedings. Hence, contrary to Carrasco's contention that a GAL has less authority in post-decree matters, the trial court did have the statutory power and authority to appoint a GAL even though the temporary custody order had already been entered. Additionally, in *Deasy–Leas*, this court determined that "the guardian is a party to the proceedings and is subject to examination and cross examination," 693 N.E.2d at 97, as the GAL's role is to "represent and protect the best interests of the child." *See* I.C. § 31–9–2–50(1). In so doing, the GAL is permitted "to present evidence regarding the supervision of the action or any investigation and report that the court requires of the guardian ad litem or court appointed special advocate." I.C. § 31–15–6–7(1). Moreover, the GAL should continue to supervise the situation "to assure that the custodial or visitation terms of an order ... are carried out...." I.C. § 31–15–6–8.

In this case, the evidence showed that while Carrasco had been granted the sole custody of both children by agreement in the original decree, she sent T.G. to live with Grubb in May, 2003. Then, *at Carrasco's request*, the GAL conducted a settlement meeting in order to address the change in T.G.'s physical custody. Although Carrasco initially agreed to the change, she refused to sign the agreement. Hence, the GAL filed a motion for a hearing. Contrary to Carrasco's contention, the GAL did have the authority to request such a hearing in light of Indiana Code section 31–15–6–7, which provides that a GAL shall continue to supervise the situation "to assure that the custodial or visitation terms of an order ... are carried out...."

We similarly reject Carrasco's argument that the GAL was simply attempting to "relitigate [the] award of custody." Appellant's Br. p. 15. To be sure, in accordance with Indiana Code section 31–17–2–21, a trial court may modify a child custody order if modification is in the best interest of the child and there has been a substantial change in one or more of the factors listed in Indiana Code section 31–17–2–8.[1] A trial court is also authorized to modify parenting time if the best interests of the child are served. I.C. § 31–17–4–2.

In *Scott v. Kell*, this court recognized that

The court granting the divorce has full and complete jurisdiction during the minority of such children, to make from

---

1. The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

  (1) The age and sex of the child.
  (2) The wishes of the child's parent or parents.
  (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
  (4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;

    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.
  (5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
  (6) The mental and physical health of all individuals involved.
  (7) Evidence of a pattern of domestic or family violence by either parent.
  (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

time to time such orders and modifications thereof with respect to their care and custody, as the court deems expedient. This means that during the minority of such children their custody is always in issue without regard to formal pleadings.

127 Ind.App. 472, 134 N.E.2d 828, 831 (1956).

Here, Carrasco testified that she feared for her and M.G.'s safety as a result of T.G.'s violent outbursts. Appellant's App. p. 34. It was T.G.'s worsening behavior that amounted to the very substantial change that justified the trial court's modification of the custody order. It was also established that T.G. was academically and emotionally doing significantly better when he went to reside with Grubb.

In light of these circumstances, Carrasco has failed to demonstrate that the GAL improperly participated in these proceedings. To the contrary, the statutes cited above permitted such participation in this case, and the evidence further established that the GAL was acting in T.G.'s best interests. Therefore, Carrasco's claim on this issue must fail.

## II. Carrasco's Right To Withdraw From the Agreement

■ Carrasco also contends that she should have been permitted to withdraw her consent to the temporary change of custody. Specifically, Carrasco asserts that she was coerced into accepting the agreement, only because the trial court had threatened to place both of her children in foster care.

■ In resolving this issue, we note that generally, a settlement agreement in a dissolution case involving child custody and visitation will be upheld unless there is evidence that the execution of the agreement was procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure. *Reno v. Haler,* 734 N.E.2d 1095, 1101 (Ind.Ct.App.2000), *trans. de-*

*nied.* Further, in order to avoid a contract on the basis of duress, "there must be an actual or threatened violence of restraint of a man's person contrary to law, to compel him to enter into a contract or discharge one." *In re Paternity of K.R.H.,* 784 N.E.2d 985, 990 (Ind.Ct.App. 2003).

In this case, the trial court made it clear to the parties that it was most concerned about stopping the fighting over the children. Appellant's App. p. 35. Moreover, the trial court acknowledged that the parties' decision to reach an agreement as to custody was within the children's best interests. The record shows that counsel represented Carrasco through the pendency of the negotiations, and there is absolutely no evidence of any threatened violence or physical restraint to Carrasco. To be sure, Carrasco did not object to the temporary order at the time it was entered. It was only after Carrasco retained alternate counsel—nearly a month after the agreed order had been entered—that she voiced any objection in an attempt to repudiate the temporary agreement. That said, the evidence and argument offered by Carrasco fails to meet the standard necessary to establish duress or coercion. As a result, we conclude that the trial court correctly denied Carrasco's motion to repudiate the temporary custody order.

## III. Trial Court's Alleged Abuse Of Discretion—Denial Of Hearing

■ Carrasco next urges that her due process rights were violated when the trial court denied her request for a hearing as to the voluntariness of her agreement to the temporary change of custody. In particular, Carrasco argues that "the trial judge's refusal even to allow [her] to establish the non-voluntariness of her 'agreement' patently violated her most fundamental procedural and substantive rights of due process," and that she had the right to challenge the agreement on the grounds

that it was procured through coercion or duress. Appellant's Br. p. 26–27.

Notwithstanding these contentions, the record shows that the trial court *did* conduct a hearing on December 16, 2003, in response to Grubb's motions to strike. Appellant's App. p. 10–12. The trial court then took the matter under advisement and issued an order granting the motions to strike on December 18. Other hearings during the proceedings were also conducted, and that record shows that Carrasco even requested that the trial court rule on her motion to correct error without a hearing. As a result, Carrasco has failed to demonstrate that she was denied due process on this, or any other basis. Hence, there was no error.

### IV. Award Of Attorneys Fees

█ Carrasco next argues that the trial court erred in ordering her to pay Grubb's attorney's fees in the amount of $1600. Specifically, Carrasco contends that such was an abuse of discretion because these proceedings were "unwarranted." Appellant's Br. p. 29. Alternatively, Carrasco argues that a fair result in these circumstances "would be to apportion any award of attorney fees equally between Appellee and the GAL and Child Advocacy Clinic." Appellant's Br. p. 29.

█ Indiana Code section 31–17–7–1(a) authorizes the court to "order a party to pay a reasonable amount to the other party of maintaining or defending [inter alia, a dissolution or custody] proceeding." Additionally, trial courts enjoy broad discretion in awarding attorney fees, and reversal is proper where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *See Thompson v. Thompson*, 696 N.E.2d 80, 84 (Ind.Ct.App.1998). Also, when determining whether or not to award attorney fees, there are several factors that the trial court tends to weigh, such as the ability to pay fees based on

earnings and whether fees and litigation expenses were incurred due to the adverse party's misconduct. *Id.*

In this case, the evidence demonstrated that Grubb earned less income than did Carrasco. Moreover, in light of the numerous motions that Carrasco had filed, the trial court could reasonably conclude that the motions she filed were frivolous and unreasonable—particularly in light of the fact that the trial court entered only a temporary order that Carrasco sought to appeal. As a result, we conclude that the trial court did not err in ordering Carrasco to pay Grubb his attorney's fees in the amount of $1600.

### V. Trial Court's Adoption Of Proposed Findings Of Fact and Conclusions Of Law

█ Finally, Carrasco argues that the trial court erred in adopting the GAL's proposed findings of fact and conclusions of law when it granted permanent custody to Grubb. Specifically, Carrasco argues that granting custody to Grubb ignores various legal presumptions that favor a child's mother, and the evidence did not support the change of custody.

█ As set forth above, a child custody order may be modified if modification is in the best interests of the child and there has been a substantial change in one or more of the factors enumerated in Indiana Code section 31–17–2–8. Also, we review the issues of visitation and custody modifications for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind.Ct.App.2003). This court will set aside the judgment only if it is clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.*

In this case, the trial court found—and the record demonstrates—that T.G. had

become abusive toward Carrasco. In fact, Carrasco was fearful for her and M.G.'s safety. Appellant's Br. p. 39. Elisa Duncan, who had been T.G.'s therapist for three months, observed that T.G. had verbally and physically attacked Carrasco. Appellant's Br. p. 39. Duncan was concerned that "T.G.'s downward spiral could lead to yet another admittance to Bloomington Hospital for stress and anxiety related issues." Appellant's App. p. 39.

The record further shows that there had been a substantial deterioration in T.G.'s relationship with M.G., and Carrasco had developed an inability to control T.G.'s behavior that threatened the children's physical and emotional safety. Appellant's App. p. 28. The record further shows that since the September 2003 temporary change in custody, T.G. became a member of the school honor roll for the first time, and T.G.'s psychiatrist recommended that he no longer needed to take psychotropic medication or undergo counseling. Appellant's App. p. 28. Carrasco acknowledged that T.G. had "[done] better" during her extended parenting time over the summer. Appellant's App. p. 28.

In light of this evidence, it was reasonable for the trial court to have concluded that it was in the children's best interests to split the custody arrangement and grant permanent custody of T.G. to Grubb, particularly in light of the fact that T.G.'s relationship with Carrasco threatened the physical and emotional safety of her and M.G.

The judgment of the trial court is affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.